---

ANITA HOLLEY,                               :
                                            :
                            Plaintiff,      :
                                            :        **Civil Action No. 12-5357 (SRC)**
                    v.                      :
                                            :                **OPINION**
CAROLYN COLVIN,                             :
ACTING COMMISSIONER OF SOCIAL               :
SECURITY                                    :
                                            :
                            Defendant       :
                                            :
                                            :

---

**CHESLER,** District Judge

## INTRODUCTION

Plaintiff Anita Holley, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), seeks review of the Commissioner of Social Security Administration's ("the Commissioner") decision denying her application for Social Security Disability Benefits. Plaintiff argues that the decision is not supported by substantial evidence and should be reversed. For the reasons set forth in this Opinion, this Court finds the Commissioner's decision is supported by substantial evidence and will be affirmed.

## PROCEDURAL HISTORY

On October 24, 2006, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 1, 2004, pursuant to Sections 216(i) and 223(d) of the Social Security Act, codified as 42 U.S.C. §§ 416(i) and 423, respectively. Plaintiff alleges disabilities of degenerative disc disease, a right ankle fracture, hypertension, and asthma. (Tr. 18). After a hearing on October 29, 2008, Administrative Law

Judge Michal L. Lissek ("ALJ Lissek") issued a decision denying Plaintiff's application on December 22, 2008. On August 17, 2009, the Appeals Council granted Plaintiff's request for review, vacated the December 22, 2008 decision, and remanded the case for a new hearing. Plaintiff appeared and testified at a rehearing held before ALJ Lissek on December 1, 2009. A supplemental hearing was held on June 23, 2010, in which medical expert Dr. Martin A. Fechner and vocational expert Rocco J. Meola appeared and testified. ALJ Lissek issued a decision on August 17, 2010. The following is a summary of the ALJ's findings:

1. Plaintiff has not engaged in "substantial gainful activity" since October 24, 2006, the application date.

2. Plaintiff did have the following "severe" impairments: low back pain with radiculopathy, neck pain, a history of right ankle fracture, status-post surgery, asthma, hypertension, exogenous obesity, mood disorder and personality disorder, NOS. However, Plaintiff did not have an impairment or combination of impairments that matched or medically equaled one of the impairments listed in the Regulations.

3. Plaintiff has the residual functional capacity to perform sedentary work, with restrictions.

4. Plaintiff's medically determinable impairments could reasonable be expected to cause her alleged symptoms and pain; however, Plaintiff's statements regarding the intensity, persistence and limiting effects of those symptoms are not credible insofar as they conflict with the residual functional capacity assessment and objective medical evidence.

5. Plaintiff is unable to perform any past relevant work. However, considering Plaintiff's age, education, experience, and residual functional capacity, there are jobs in sufficient numbers that exist in the national economy that Plaintiff can perform.

6. Plaintiff has not been under a disability since October 24, 2006, the date the application was filed.

The Appeals Council affirmed the ALJ's decision on August 17, 2010. Pursuant to 42 U.S.C. §§ 1383(c) and 405(g), Plaintiff filed the instant action, seeking review of the Commissioner's decision.

## STATEMENT OF FACTS

### A. Background

Plaintiff, Anita Holley, born September 1, 1964, is a 48-year-old United States citizen who resides alone in Jersey City, NJ. (Tr. 21, 33, 190). She is 4'10" and weighs 204 pounds. (Tr. 22). Prior to the onset of her alleged disabling conditions, Plaintiff worked as a cashier and cook for various fast food restaurants. (Tr. 191). Plaintiff worked regularly until 1999, when a box fell on her at work and she developed back and right hand problems. (Tr. 21). She was hit by a car in 2004 which crushed her ankle, and subsequently underwent open reduction and internal fixation, causing Plaintiff to walk with an impaired gait and requiring her to use a hand-held assistive device for ambulation. (Tr. 21, 25). Plaintiff was then in a motor vehicle accident in 2008, which exacerbated her back and neck impairments. (Tr. 416). Plaintiff states that she is in constant pain that worsens with sitting and walking and is not relieved by various pain medications, has difficulty concentrating, and suffers from asthma and depression. (Tr. 21). Plaintiff reports that she is unable to return to work because of the persisting effects of her pain. (Tr. 21).

### B. Claimed Disabilities

Beginning January 1, 2004, Plaintiff claims disability due to degenerative disc disease, a right ankle fracture, hypertension, and asthma. (Tr. 18). Plaintiff states that she cannot work

because of the intensity of her lower back pain, which prevents her from sitting for more than fifteen minutes or standing for extended periods of time, and she has difficult concentrating. (Tr. 21).

Plaintiff reports that she suffers from sharp, constant pain in her back that travels to both legs. (Tr. 21, 346). In May 2006, Dr. Lyons performed an MRI of the lumbosacral spine and diagnosed Plaintiff with advanced degenerative disc disease with no evidence of neural impingement or canal stenosis. (Tr. 267). After the June 2008 motor vehicle accident, Plaintiff's neck and back pain were exacerbated and she was referred to Dr. Roman Sorin for evaluation. (Tr. 416). Dr. Sorin performed an electromyography exam (EMG), which showed moderate bilateral L4-5 radiculopathy and substantiated Plaintiff's lower back pain and radiation to both legs. (Tr. 22). Dr. Sorin diagnosed Plaintiff with several impairments including traumatic lumbosacral radiculitis. (Tr. 423). In August 2008, Dr. John S. Lyons performed additional MRIs of Plaintiff's lumbosacral spine and cervical spine, which showed disc herniation at L5-S1, cervical spine tears at C4-5 and C5-6, subligamentous herniations, and straightening of the cervical curve. (Tr. 306-07). Due to the severity of Plaintiff's lower back pain and lack of response to physical therapy and chiropractic treatment, she was then referred to pain specialist Dr. Amrish Patel. (Tr. 437). Dr. Patel administered two lumbosacral epidural steroid injections. (Tr. 431). Plaintiff reported that the first injection eased her pain somewhat, but she was unresponsive to the second injection. (Tr. 538). A third injection was suggested by Dr. Patel, but Plaintiff never received it. (Tr. 439).

Plaintiff has used a hand-held assistive device for ambulation since the 2004 accident and the subsequent ankle surgery. It was prescribed by her surgeon as well as her treating physician Dr.

Saleem Mahmood. (Tr. 21). Plaintiff reported that she has not had major problems with her right ankle since the 2004 surgery. (Tr. 26).

Plaintiff has hypertension, but it is fairly well controlled and the medical record does not reflect significant related end organ damages. (Tr. 25). Plaintiff was seen in the emergency room in May of 2007 with complaints of chest pain, but her symptoms were deemed non-cardiac in nature. (Tr. 25). A stress test performed in May of 2007 was negative, and an EKG performed on Plaintiff was essentially normal, except for sinus tachycardia. (Tr. 25). Additionally, Plaintiff reports visiting the emergency room four or five times for the treatment of asthma, most recently in March or May of 2009. (Tr. 21). Plaintiff is on asthma medication and uses a nebulizer twice a day. (Tr. 21). Dust, sprays, perfumes, and odors aggravate Plaintiff's asthmatic symptoms. (Tr. 21). Plaintiff's asthma is controlled when she is compliant with her medication. (Tr. 26).

In addition to her physical ailments, Plaintiff claims to have mental difficulties concentrating and is unable to keep her mind on things, which affects her ability to return to work. (Tr. 21). Plaintiff additionally has problems with depression, but is not on any medication for it because her doctor indicated that her blood pressure medication would help with depression. (Tr. 21).

**C. Medical Evidence Considered by the ALJ:**

**a.** <u>Medical Testimony of Dr. Fechner, board-certified expert in internal medicine</u>

Based on his review of the medical records, Dr. Fechner stated that Plaintiff had four diagnoses: (1) exogenous obesity; (2) high blood pressure; 3) asthma; and (4) lower back pain with radiculopathy. (Tr. 22, 540-41).

Dr. Fechner testified that the medical record substantiates Plaintiff's statements of pain. (Tr. 22). He noted that continuous pressure on the lower back from sitting could increase Plaintiff's

pain, especially in an obese individual.  (Tr. 22).  Dr. Fechner stated that the record included an EMG taken in October 2008 that showed L4 to L5 moderate bilateral radiculopathy on both sides, substantiating Plaintiff's leg pain.  (Tr.  541).  He also stated that Plaintiff received an MRI in May 2006 that revealed degenerative disc disease and disc herniation at L5-S1, but the MRI showed no neural impingement or canal stenosis.  (Tr. 22).  Dr. Fechner explained that patients with this type of MRI would have no symptoms, and because the EMG shows radiculopathy, Plaintiff must have some nerve impingement not seen on the MRI.  (Tr. 22).

With regards to Plaintiff's neck pain, Dr. Fechner testified that an August 2008 MRI showed tears at C4-5 and C5-6 along the cervical spine, subligamentous herniations, and straightening of the cervical curve.  (Tr. 22).  Dr. Fechner explained that Plaintiff's spinal cord was normal and that both the canals and foramina are present, and the MRI is again one that could occur in patients with or without symptoms.  (Tr. 22).  Dr. Fechner stated that no EMG/NCV studies of the upper extremities would corroborate Plaintiff's symptoms.  (Tr. 22).

Dr. Fechner testified that, based on his review of the medical records, Plaintiff impairments did not meet or equal any of the listings, either singly or in combination.  (Tr. 22).  Dr. Fechner found that Plaintiff would be capable of sedentary sitting work under the following restrictions: (1) lifting 10 pounds occasionally; (2) no more than an aggregate of two hours walking and standing throughout an 8-hour day; (3) avoid climbing ladders, ropes, scaffolds, or crawling; (4) no more than occasional bending and stooping; and (5) avoid extreme temperatures, excessive amounts of dust, and known pulmonary irritants.

**b.** <u>Medical Opinion of treating physician Dr. Mahmood</u>

Dr. Mahmood has treated Plaintiff intermittently since March 2003 for chronic low back pain, ankle pain, gastroesophageal reflux disease, sinusitis, anxiety and asthma.  (Tr. 331-32).

Dr. Mahmood has prescribed Plaintiff medications including Ultram, Flexeril, Avalide, and Vicodin. (Tr. 375). Dr. Mahmood reports that Plaintiff has several physical limitations as a result of her impairments. (Tr. 332). Based on Dr. Mahmood's evaluation in August 2007, Dr. Mahmood opined that Plaintiff had difficulty walking, cannot walk more than 2 hours, and cannot stand more than 2 hours a day. (Tr. 331). Dr. Mahmood opined that Plaintiff can lift up to 15 pounds at a time and has difficulty pushing, pulling, and lifting. (Tr. 331).

In a report to Work First New Jersey in March 2009, Dr. Mahmood estimated a period of disability from March 24, 2009 to March 23, 2010. (Tr. 441). Dr. Mahmood listed bronchial asthma as Plaintiff's primary diagnosis, and listed osteoarthritis of Plaintiff's ankle as the only other physical condition. (Tr. 441). Dr. Mahmood also listed that Plaintiff has an anxiety disorder, but did not provide further information or recommend treatment. (Tr. 440). Dr. Mahmood reported that Plaintiff needs use of a cane. (Tr. 441). He also reported that Plaintiff was at times noncompliant with his recommendations. (Tr. 28). Dr. Mahmood opined that Plaintiff has limitations in standing, walking, climbing, stooping, bending, and lifting. (Tr. 441).

**c.** Medical Opinion of state agency orthopedic consultant Dr. Vassallo

Dr. Vassallo gave Plaintiff an orthopedic consultative examination in July 2004. Based on this examination, Dr. Vassallo opined that Plaintiff is hypertense with chronic low back pain with right sciatic syndrome and neurological deficit. (Tr. 346). He additionally reported that X-rays revealed degenerative disc disease at L5-S1. (Tr. 25). Dr. Vassallo stated that Plaintiff had limited motion of the shoulders and lumbar spine and full motion of the cervical spine. (Tr. 25). Dr. Vassallo then concluded that Plaintiff has an impaired gait and required the use of a hand-held assistive device for ambulation, and can use both hands for gross and fine manipulation. (Tr. 347).

**d.** Medical Opinion of treating pain management specialist Dr. Patel

Dr. Patel is a treating pain management specialist that Plaintiff visited in January 2009. (Tr. 437). Plaintiff's chief complaint was of lower back pain radiating down both legs that is aggravated mostly by sitting for any period of time. (Tr. 437). Plaintiff reported no pain prior to the June 28, 2008 motor vehicle accident. (Tr. 437). Dr. Patel observed that lumbosacral range of motion was approximately 75% of normal. (Tr. 438). Sensation was reduced in the left L4-L5 dermatomal distribution as well as in the right L5 dermatomal distribution, consistent with an October 10 lower extremity EMG that revealed moderate L4-L5 radiculopathy in the left and right sides. (Tr. 438-39). Dr. Patel diagnosed Plaintiff with a traumatic lumbosacral sprain, lumbosacral myofaciitis, lumbar disc herniation and bulge, and lumbar radiculopathy. (Tr. 439). Dr. Patel recommended for treatment that Plaintiff received three epidural steroid injections, but Plaintiff only received two injections. (Tr. 28, 439).

**e.** Medical Opinion of state agency medical consultant Dr. Hoffman

Dr. Hoffman gave Plaintiff a consultative examination in November 2009. (Tr. 28). Plaintiff reported that she was presently only taking a muscle relaxant, but has had various pain medications in the past. (Tr. 450). Plaintiff reported that she lives alone and performs her own shopping, cooking, and cleaning and uses a cane, but left it at home that day. (Tr. 450). Plaintiff reported that she had no major problems with her right ankle since the 2004 surgery. (Tr. 450). Plaintiff reported that she uses a nebulizer occasionally and has had no recent treatment for acute asthmatic episodes. (Tr. 450). Plaintiff additionally stated that she takes medication for elevated blood pressure but denied a history of chest pain or cardiac disease. (Tr. 450).

Dr. Hoffman observed that Plaintiff was morbidly obese, walked slowly, and was able to get on the exam table herself but complained of lower back pain. (Tr. 451). Plaintiff reported

arthritis of her hands, but Dr. Hoffman did not observe any swelling or crepitus, but did observe decreased grip strength in both hands.  (Tr. 451-52).  Based on the conclusion of various range of motion tests and normal EKG results, Dr. Hoffman concluded that there was no evidence of any neurologic or reflex deficit, no acute arthritic process, and Plaintiff was able to ambulate without the use of an assistive device. (Tr. 452).

### f. Medical Opinion of state agency psychological consultant Dr. Figurelli

Dr. Figurelli gave Plaintiff a psychological consultative examination in November 2009.  (Tr. 29).  Plaintiff attended the examination unaccompanied, and Dr. Figurelli observed that she was adequately groomed and remained alert and responsive throughout.  (Tr. 443).  Dr. Figurelli opined that Plaintiff had no difficulty with immediate recall or with sustained concentration on structured tasks of relatively short duration.  (Tr. 444).  Plaintiff showed mild difficulty with delayed recall.  (Tr. 444).  Plaintiff's mood was mildly depressed.  (Tr. 444).  Plaintiff reported that she lives alone, can take public transportation independently, and is independently functional in areas of personal care, basic self help skills, and various routine household chores including cooking, cleaning, and shopping that does not involve lifting.  (Tr. 445).

Dr. Figurelli opined that the current limitations on Plaintiff's social and occupational functioning are primarily related to her multiple medical conditions and secondarily related to her difficulties with controlling and expressing mood.  (Tr. 445).  Dr. Figurelli diagnosed Plaintiff with Mood Disorder NOS and rule out personality disorder with a GAF of 60.  (Tr. 445).  Dr. Figurelli determined that Plaintiff had no or mild limitations with respect to performing work related activities.  (Tr. 447-48).

**D. Other Expert Testimony Considered by the ALJ:**

    **a.** <u>Expert Testimony of Rocco Meola, Vocational Expert</u>

Mr. Meola reviewed the vocational evidence for Plaintiff's case in the context of the Dictionary of Occupational Titles. (Tr. 558). He rated Plaintiff's position as a cook for a fast food restaurant as a medium labor job at the low end of the semi-skilled level. (Tr. 22). Mr. Meola also rated Plaintiff's prior position as a cashier and other jobs as light and unskilled. (Tr. 22). Based on the ALJ's finding that Plaintiff had the residual functional capacity for sedentary work with stated limitations, Mr. Meola testified that Plaintiff would not be able to return to her prior work. (Tr. 23).

During his testimony, ALJ Lissek presented Mr. Meola with a series of hypotheticals, each time adding limitations, and asking Mr. Meola what jobs, if any, a person with such impairments would be capable of performing. (Tr. 22-24). Mr. Meola testified that, under the restrictions described by Plaintiff herself in which she was capable of only sitting for 15 minutes at a time and only one and a half hours in an 8-hour day, Plaintiff would not be capable of performing her past work or any other work in the national economy. (Tr. 23). Under the second, third, and fourth hypotheses, a person with the restrictions described by Dr. Fechner, due to Plaintiff's impairments, in which Plaintiff could perform sedentary work that could be learned within 30 days and involved minimal contact with the general public and supervisors, would be capable of performing the work required of any unskilled sedentary job, such as a document prep worker, a sorter, an assembler, and a hand mounter. (Tr. 23, 559-60). Mr. Meola testified that about 1,000 of these latter jobs exist in the Northern New Jersey and New York metropolitan areas, and over 30,000 such jobs exist nationally. Mr. Meola testified that Plaintiff's need for a cane had no bearing on the ability to do unskilled sedentary jobs. (Tr. 24). Under the final set of

restrictions, in which a person was only capable of sitting for four hours in an 8-hour day, Mr. Meola testified that there were not sufficient jobs in the national economy that Plaintiff could perform with those limitations. (Tr. 24). Mr. Meola also testified that if an individual could only concentrate occasionally, they would not be able to perform the aforementioned jobs. (Tr. 24).

## DISCUSSION

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). This Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.2d 357, 360 (3d Cir. 2004). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom.; Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided

the factual inquiry differently." <u>Fargnoli v. Massanari</u>, 247 F.3d 34, 35 (3d Cir. 2001); <u>see also</u> <u>Hartranft  v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history, and present age." <u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1973). "The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." <u>Sassone v. Comm'r of Soc. Sec.</u>, 165 F. App'x 954, 955 (3d Cir. 2006) (citing <u>Blalock</u>, 483 F.2d at 775).

### B. Standard for Awarding Benefits Under the Act

The claimant bears the initial burden of establishing his or her disability. 42 U.S.C. § 423(d)(5). To qualify for Social Security disability benefits, a claimant must first establish that he is needy and aged, blind, or "disabled." 42 U.S.C. § 1381. A claimant is deemed "disabled" under the Act if she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); <u>see also</u> <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairments are so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. § 423(d)(2)(A). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability. 42 U.S.C. § 423(d)(5)(A). To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

### C. The Five-Step Evaluation Process

Determinations of disability are made by the Commissioner pursuant to the five-step process outlined in 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

At step one, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity, which is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 404.1510, .1520. If a claimant is found to be engaged in such activity, then the claimant is not "disabled" and the disability claim will be denied. Id.; Yuckert, 482 U.S. at 141.

At step two, the Commissioner must determine whether the claimant is suffering from any severe impairments. 20 C.F.R. §§ 404.1520(a)(ii), (c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Id. In making this determination, the age, education, and work experience of the claimant will not be considered. Id. If a severe impairment is found, the inquiry proceeds to step three.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R. § 404.1594(f)(2). If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled

under the Social Security Act. If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four.

In Burnett v. Commissioner of Social Security, the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[1] apply and give reasons why those listings are not met or equaled. 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000). In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Id. An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant listing." Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(e). If the claimant is able to perform her past relevant work, she will not be found disabled under the Act. In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the claimant has the level of capability need to perform the past relevant work.

Burnett, 220 F.3d at 120. If the claimant is unable to resume her past work, and her condition is deemed "severe," but is not listed, the evaluation moves to the final step.

---

[1] Hereinafter, "listing" refers to the list of severe impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step five, the burden of proof and production shifts to the Commissioner, who must demonstrate that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  20 C.F.R. §§ 404.1512(g), 404.1560(c)(1).  If the ALJ finds a significant number of jobs that claimant can perform, the claimant will not be found disabled.  Id.

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner, throughout the five-step process, "must analyze the cumulative effect of the claimant's impairment in determining whether she is capable of performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999); 20 C.F.R. § 1523.  At every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but it need not "adhere to a particular format."  See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006).  However, in the first four steps of the process, Plaintiff bears the burden of proving that the impairments in combination are severe enough to qualify her for benefits.  See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (Plaintiff bears burden of showing how a combination-effects analysis would have resulted in a qualifying disability.)

### D.  ALJ Lissek's Findings

ALJ Lissek followed the five-step sequential evaluation and determined that Plaintiff was not disabled within the meaning of the Act.  (Tr. 19)

ALJ Lissek held that Plaintiff satisfied the first step because she has not engaged in substantial gainful activity since the application date on October 24, 2006.  (Tr. 24).

In satisfying step two, ALJ Lissek found that Plaintiff has "the following severe impairments: low back pain with radiculopathy, neck pain, a history of right ankle fracture,

status-post surgery, asthma, hypertension, exogenous obesity, mood disorder and personality disorder, NOS (20 C.F.R. § 416.971)." (Tr. 24).

At step three, ALJ Lissek determined that none of Plaintiff's ailments, or alleged ailments, met of medically equaled, alone or in combination, any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24).

The ALJ also considered Plaintiff's subjective complaints of pain and concluded that, although Plaintiff's diagnosed severe ailments could be reasonably expected to cause her pain, Plaintiff's allegations concerning the severity, persistence, and limiting effects of the pain were not credible where they contradicted the assessment of Plaintiff's residual functional capacity. (Tr. 27). The ALJ made this determination based on, among other things, a lack of objective medical evidence that Plaintiff's pain precluded her from performing all work activity, a lack of treatment records substantiating the alleged effects of Plaintiff's asthma, and Plaintiff's ability to perform the tasks of daily life independently. (Tr. 30).

At step four, ALJ Lissek found that Plaintiff was capable of handling the exertional, postural, and environmental demands of sedentary work, with some restrictions. (Tr. 26). Plaintiff can handle the following exertional demands: (1) lift and carry ten pounds occasionally; (2) stand or walk for two hours in an eight-hour work day; and (3) sit for six hours in an eight-hour work day. (Tr. 26-32). Plaintiff can handle sedentary positions with the following postural and environmental demands: (1) no use of ladders, ropes, or scaffolds; (2) no crawling; (3) only occasional bending and stooping; and (4) no working around extremes in temperature, undue amounts of dust or other known pulmonary irritants. (Tr. 32). Plaintiff is limited to work that takes no more than 30 days to learn and that involves minimal contact with the general public and with supervisors. (Tr. 32-33). As Plaintiff's former jobs as a cook and cashier both require

medium exertional demands, the ALJ noted that Plaintiff would not be able to perform her past work as it was previously performed, given her current exertional, postural, and environmental restrictions. (Tr. 33).

ALJ Lissek also considered the effect of Plaintiff's hypertension, neck pain, asthma, and obesity on her severe impairments. (Tr. 31). Plaintiff has hypertension, however, the medical evidence does not document any significant end organ damage. (Tr. 31). Plaintiff has neck pain, but the August 2008 MRI shows a normal spinal cord and that both the canals and foramina are patent. (Tr. 22). Plaintiff has asthma and testified that she had four or five ER visits for acute attacks in 2009 and that she uses her nebulizer twice a day, however, she told Dr. Hoffman that she had no recent ER treatments for asthma and that she only uses her nebulizer occasionally. (Tr. 31). The ALJ found that based on the medical evidence, Plaintiff's hypertension, neck pain, and asthma do not impose restrictions that would prevent Plaintiff from performing sedentary work. (Tr. 450).

Plaintiff was examined by Dr. Hoffman, who listed her height as 4'11" and her weight as 204 pounds, and described her as "morbidly obese." (Tr. 451). The ALJ noted, however, that nothing in the medical record referenced any functional limitations associated with Plaintiff's weight, and Plaintiff's testimony indicated her obesity did not interfere with the physical and mental ability to sustain sedentary work activity. (Tr. 31). The ALJ found that Plaintiff's obesity neither aggravated any of her other severe impairments nor provided any basis to result in a totally disabling limitation of functioning. (Tr. 31).

ALJ Lissek additionally considered the effect of Plaintiff's alleged mental impairment on her ability to perform sedentary work. (Tr. 32). While Dr. Mahmood noted anxiety as a disabling condition in his report to WFNJ, he is not a mental health professional and the ALJ

thus accorded the opinion lesser weight under 20 C.F.R. § 416.927.  (Tr. 32).  The ALJ also

considered the opinion of Dr. Figurelli based on his 2009 consultative examination of Plaintiff.

(Tr. 32).  Dr. Figurelli reported that Plaintiff was not taking any psychotropic medication and

that she denied any history of mental health treatment.  (Tr. 32).  Dr. Figurelli also reported that

he believed Plaintiff's limitations in social and occupational functioning were primarily based

upon her multiple medical conditions rather than any mental or emotional impairments, and that

Plaintiff had no or mild limitation in all areas of her ability to do work related activities.  (Tr.

32).  ALJ Lissek thus concluded that Plaintiff was limited to work that takes no more than 30

days to learn and involved minimal contact with the general public and supervisors.  (Tr. 32).

At step five, the ALJ heard testimony from vocational expert Rocco Meola. The ALJ

determined that Plaintiff is a younger individual with limited education.  (Tr. 33).  Considering

Plaintiff's residual functional capacity along with her age, education, and work experience, there

are jobs that exist in significant numbers in the national economy that the claimant can perform.

(Tr. 33-34).  As such, ALJ Lissek held that Plaintiff was not under a disability as defined by the

Social Security Act from the date the application was filed through the date of the decision.  (Tr.

34).

**E.  Analysis**

Plaintiff contends that ALJ Lissek's decision should be reversed because: (1) ALJ Lissek

failed to properly evaluate the credibility of Plaintiff's subjective complaints regarding the

intensity, persistence and functionally limiting effects of her symptoms; (2) ALJ Lissek failed to

properly evaluate the combined effects of Plaintiff's severe spinal impairment and obesity on her

ability for prolonged sitting; (3) ALJ Lissek erred by failing to take into account the totality of

Plaintiff's impairments and limitations in solely relying on an inaccurate and underinclusive

vocational hypothetical; and (4) the Commission failed to satisfy his step five burden of proof by relying on speculative and insufficiently supported vocational testimony. (Pl.'s Mem. L. at 1-2).

   **a.  Did ALJ Lissek Fail to Properly Evaluate the Credibility of Plaintiff's Subjective Complaints of Severe Pain?**

Plaintiff contends that ALJ Lissek's credibility determination regarding Plaintiff's statements about the intensity, persistence and functionally limiting effects of her symptoms was in error. (Pl.'s Mem. L. at 19-35). The Regulations state that subjective reports of pain must be considered as a factor in the ALJ's analysis. 20 C.F.R. § 404.1529(c). Since pain cannot be quantified, subjective "assertions of pain must be given serious considerations." Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981). Plaintiff, however, still bears the burden of producing evidence to support his subjective complaints of severe pain. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987) (the Plaintiff bears the burden of proof at the first four steps). Accordingly, subjective claims of pain and impairment "will not alone establish . . . [disability]; there must be medical signs and laboratory findings . . . [demonstrating] medical impairments, which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a). In other words, while there must be objective evidence of a condition that could cause the pain alleged, there need not be objective evidence of the pain itself. Green v. Schweiker, 749 F.2d 1066 (3d Cir. 1984). It is within an ALJ's discretion to discount Plaintiff's subjective complaints of severe pain if the ALJ has considered Plaintiff's complaints and can "specify his reasons for rejecting these claims and support his conclusion with medical evidence in the record." Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990).

   In this case, there is substantial evidence to support the ALJ's decision to accord lesser weight to Plaintiff's subjective claims considering the intensity, persistence and limiting effects of her symptoms. (Tr. 27-28). The ALJ discussed how, despite the fact that the medical record

shows that Plaintiff was treated by various physicians over the years for lower back pain and demonstrated objective medical evidence of disc degeneration and radiculopathy, the record does not support Plaintiff's allegations of the severity of that pain. (Tr. 27-28). For example, the ALJ points out that Plaintiff's May 2006 and August 2008 MRI's of the lumbar spine were essentially the same, indicating that Plaintiff's lower back condition did not worsen over time. (Tr. 27). Further, the MRI's showed no evidence of stenosis or cord compromise, making severely disabling symptoms unlikely. (Tr. 31). The ALJ also considered the opinion of Dr. Fechner, who stated that Plaintiff was capable of "sedentary sitting activities," specifying that she could lift ten pounds, and walk and stand a total of two hours in an eight hour workday. (Tr. 27-28). Dr. Fechner's opinion was substantiated by the medical record as well as Plaintiff's physician, Dr. Mahmood's, examination findings.

ALJ Lissek cited numerous inconsistencies between Plaintiff's testimony and her functional abilities in determining that Plaintiff's statements about the intensity and functionally limiting effects of her pain were not credible. (Tr. 27-30). The ALJ explained that, while Plaintiff reported to Dr. Hoffman that she uses her cane only occasionally, she testified at her hearing that she used her cane all the time. (Tr. 28). Plaintiff also reported to Dr. Hoffman and Dr. Figurelli that she functioned independently and did her own cooking, cleaning and shopping. (Tr. 31). A month later, however, Plaintiff testified that she relied upon her girlfriend for help with activities of daily living. (Tr. 533-34). Further, despite testifying that she could not walk more than a block or sit for longer than fifteen minutes, she went on to testify that she sat in her house during the day and went for walks and shopping with her girlfriend. (Tr. 537). Under SSR 96-7p, internal inconsistencies in a person's statements are a strong indicator with respect to credibility.

The record shows numerous inconsistent statements made by Plaintiff on a variety of topics, thereby supporting the ALJ's credibility determination.

Plaintiff also argues that ALJ Lissek erroneously relied on the prohibited "sit and squirm" test to find that Plaintiff was capable of six hours of sitting. (Pl.'s Mem. L. at 21). Plaintiff testified that she is only able to sit for about fifteen minutes at a time before she needs to get up due to the pain in her lower back. (Tr. 530-31). The ALJ observed, however, that Plaintiff was able to sit through the entire 65 minutes of her hearing and did not get up even when invited to do so. (Tr. 30). Plaintiff's argument that the ALJ's reliance on this observation is erroneous as a matter of law is incorrect because the ALJ's observations of Plaintiff during the hearing did not serve as the sole basis for his credibility finding, and instead served as an element of his credibility analysis. (Tr. 26-30). In sum, substantial evidence in addition to the ALJ's observations during the hearing supports the conclusion that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were not fully credible to the extent alleged. (Tr. 27).

Plaintiff alleges that the ALJ relied on the erroneous assumption that treating physician Dr. Mahmood stated that Plaintiff could perform sedentary work. (Pl.'s Mem. L. at 23-25). Dr. Mahmood described that Plaintiff was in fact capable of meeting the exertional demands of sedentary work without expressly stating that his description of Plaintiff's abilities matched that of a sedentary job. (Tr. 331). Dr. Mahmood further made no statements or observations about Plaintiff's alleged ability to sit for limited periods of time. (Tr. 331-34). Plaintiff also asserts that the ALJ erroneously relied on the incorrect critical fact that Dr. Mahmood observed an improvement in Plaintiff's condition. (Pl.'s Mem. L. at 23). This inconsistency is a minor detail that goes to the credibility of Dr. Mahmood and is not a critical fact contributing to the ALJ's

ultimate decision.  The ALJ does not discredit Dr. Mahmood's testimony in the opinion and thus this inconsistency is an insufficient ground for reversal.

Plaintiff lastly asserts that the ALJ mischaracterized Plaintiff's treatment regimen and medications.  (Pl.'s Mem. L. 29-32).  With respect to Plaintiff's treatment, Dr. Mahmood stated that Plaintiff had been "noncompliant and at times combative."  (Tr. 27).  Despite Plaintiff's alleged pain, she visited Dr. Mahmood only intermittently since 2003, including failing to return to the clinic for follow-up appointments.  (Tr. 268, 380).  The ALJ also pointed to the fact that, despite Dr. Patel's treatment plan calling for Plaintiff to have three epidural steroid injections, the record shows that she only received two injections despite her statement that she received some relief from the injections.  (Tr. 28, 431).  Plaintiff offered contradictory testimony at the December 1, 2009 hearing, stating that the injection did not help.  (Tr. 538).  The record substantially supports the ALJ's inferences about Plaintiff's treatment regimen and medications. In sum, substantial evidence supports that ALJ's conclusion that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not credible to the extent alleged.

### b.  Did ALJ Lissek Properly Consider the Combined Effects of Plaintiff's Severe Impairments and Obesity as Required by 42 U.S.C. § 423(d)(2)(B)?

Plaintiff specifically objects to ALJ Lissek's alleged disregard of the effects of Plaintiff's obesity in combination with her other severe impairments.  (Pl.'s Mem. L. at 35).  Throughout the five-step process, the ALJ is obliged to consider all of the alleged impairments individually and in combination.  42 U.S.C. § 423(d)(2)(B).  However, Plaintiff still bears the burden in the first four steps of the analysis of demonstrating how her impairments, whether individually or in combination, amount to a qualifying disability.  Burnett, 220 F.3d at 118; Williams, 87 F. App'x at 243.  Plaintiff asserts that ALJ Lissek did not properly consider the impairments in

combination, especially with regard to her obesity. (Pl.'s Mem. L. at 35). In the opinion, ALJ Lissek included a section, in addition to further analysis elsewhere in the opinion, devoted to discussing the combined impact of Plaintiff's impairments. (Tr. 26, 31). In analyzing the evidence, the ALJ is not obligated to employ particular "magic words" ((Sassone v. Comm'r of Soc. Sec., 165 F. App'x 954, 959 (3d Cir. 2006) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004))), or adhere to a particular format in explaining the decision. Jones, 364 F.3d at 505. The ALJ must only ensure "that there is sufficient development of the record and explanation of findings to permit meaningful review." Id.

In light of these standards, ALJ Lissek's opinion shows that she adequately considered Plaintiff's impairments in combination, assessed their combined severity, and properly analyzed their impact on Plaintiff's ability to perform past relevant work. ALJ Lissek evaluated the severity of Plaintiff's claimed impairments–asthma, hypertension, lower back and neck pain, right ankle fracture, mood disorder, NOS, personality disorder, and obesity–and found that none of them was severe enough to be disabling, though the effects of her impairments were sufficient to limit her to sedentary occupations. (Tr. 25-26). ALJ Lissek also specifically addressed the questions of the combination of obesity with other severe impairments, stating that, while Plaintiff is obese, nothing in the medical record referencing Plaintiff's weight indicates any associated adverse impact on her other conditions, or any functional limitations due to the combined effect of her obesity. (Tr. 26, 31). Thus, the ALJ concluded that "even when obesity is considered in combination with [Plaintiff's] other impairments, it does not result in a totally disabling limitation of functioning." (Tr. 31).

ALJ Lissek found that, based on the medical evidence provided, Plaintiff's obesity considered with her other impairments did not limit Plaintiff's ability to perform sedentary work.

(Tr. 26, 31). ALJ Lissek considered Plaintiff's obesity in the analysis of her alleged disability, but found no evidence that it either caused or aggravated any of her severe impairments. (Tr. 26, 31). The ALJ acknowledged that obesity could cause exertional and postural limitations as well as fatigue, which could interfere with an individual's ability to sustain work activity. (Tr. 26,31). Crucially, however, Plaintiff does not point to anything in the medical record which states any such limitations associated with her weight. (Tr. 31).

In considering the impact of Plaintiff's obesity on her overall functional abilities, the ALJ considered Plaintiff's ability to cook, clean, and shop independently, the fact that she was able to through her disability hearing, and the fact that she generally is able to walk without an assistive device. (Tr. 31). The ALJ also properly relied heavily on the testimony of Dr. Fechner, who stated that Plaintiff retained the exertional residual functional capacity to perform sedentary work considering her obesity. (Tr. 22). Dr. Fechner's opinion was corroborated by that of Dr. Mahmood as well as the medical evidence. (Tr. 30, 540, 545). In sum, the ALP properly considered Plaintiff's obesity in combination with her other impairments and found that it did not preclude Plaintiff from performing sedentary work, as supported by substantial evidence.

### c. Did ALJ Lissek Present a Proper Hypothetical Question Factoring the Totality of Plaintiff's Impairments and Limitations to the Vocational Expert?

Plaintiff asserts that the hypothetical question posed by the ALJ to the vocational expert, Rocco Meola, failed to reflect all of Plaintiff's impairments as supported by the record because it was derived from an erroneous residual functional capacity determination at step four. (Pl.'s Mem. L. at 37). Even if Plaintiff is correct that the ALJ's step four discussion did not include every symptom Plaintiff complained of, the inquiry that this Court makes is whether the determination is supported by substantial evidence. The inquiry is not whether there is some

contrary evidence, but whether the determination is supported by substantial evidence. Plaintiff's listing of some omitted symptoms does not persuade this Court that the ALJ's residual functional capacity determination is not supported by substantial evidence.

Plaintiff alleges that the hypothetical question and the underlying residual functional capacity determination is inadequate because the ALJ did not include the moderate limitations she has in maintaining concentration, persistence, and pace. (Pl.'s Mem. L. at 38-40). At step 3 of evaluation, the ALJ considered the "B" criteria of Listings 12.04 and 12.08, finding that Plaintiff had moderate difficulties in the area of concentration, persistence and pace, but noted that these limitations are not a residual functional capacity assessment and are instead used to rate the severity of mental impairments at steps two and three of the evaluation process. (Tr. 26). The ALJ subsequently made a thorough RFC finding that accounted for Plaintiff's limitations as demonstrated by the medical evidence. (Tr. 26). The ALJ asked the VE to assume that the hypothetical individual was limited to performing job tasks that could be learned in thirty days or less and involving only occasional contact with the general public and supervisors, based on Dr. Figurelli's consultative examination and report that Plaintiff had no or mild limitation in all areas of work-related activities based on her mental impairments of mood disorder NOS and possible personality disorder. (Tr. 26). These limitations reflected the ALJ's more "detailed residual functional capacity assessment," used at steps four and five of the evaluation, of the moderate limitations found at step three. See SSR 96–8p. The Third Circuit has found that an ALJ's hypothetical questions limiting a claimant to simple, routine tasks may sufficiently account for a claimant's moderate limitations in concentration, persistence, and pace. See McDonald v. Astrue, 293 F. App'x. 941, 946 (3d Cir. 2008); Menkes v. Astrue, 262 F. App'x. 410, 412 (3d Cir. 2008).

Further, despite the fact that Plaintiff had some limitations in concentration, persistence, and pace, Dr. Figurelli concluded that Plaintiff would have no limitations in understanding, remembering, and carrying out simple instructions and making judgments on simple work-related decisions. (Tr. 29, 447). Dr. Figurelli concluded that Plaintiff was only mildly limited in all other work-related functions and that she displayed no difficulty sustaining concentration on structured tasks of relative short duration. (Tr. 447). Thus, as to mental impairments, the residual functional capacity determination is supported by substantial evidence, and the hypothetical ALJ Lissek posed to the VE properly accounted for all of Plaintiff's credibly established mental limitations.

Plaintiff also alleges that the ALJ presented an underinclusive hypothetical question because it did not properly account for limitations in Plaintiff's ability to sit. (Pl.'s Mem. L. at 40-41). The ALJ's determination regarding Plaintiff's exertional residual functional capacity is supported by substantial evidence, however, and the ALJ was only required to present a hypothetical question that included those limitations credibly established by the record. See Smith v. Astrue, 631 F.3d 632 (3d Cir. 2010); Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). In sum, the hypothetical question relied upon by the ALJ properly accounted for Plaintiff's limitations and exertional residual functional capacity, and the ALJ was not required to accept the vocational expert's testimony in response to other hypothetical questions not supported by the record.

### d. Was the Vocational Expert's Testimony Sufficient to Provide Substantial Evidence to Satisfy the Commissioner's Step Five Burden?

Plaintiff asserts that the Commissioner failed to satisfy his burden of proof at step five of evaluation because the ALJ provided a fatally underinclusive hypothetical to the vocational expert and the vocational testimony was fatally flawed in additional respects. (Pl.'s Mem. L. at

42). In response to the ALJ's decisive hypothetical, the VE identified four demonstrative occupations to which Plaintiff would be able to perform the requirements of: 1) document prep worker (DOT number 249.587-018); 2) sorter (DOT number 735.687-030); 3) assembler (DOT number 739.687-066); and 4) hand-mounter (DOT number 976.684-018). (Tr. 33). The VE testified that in aggregate, there are approximately 1,000 jobs in these occupations in the Northern New Jersey/New York area, and 30,000 nationwide. (Tr. 559-60). The VE elaborated that the four titles he listed were examples only, and there was approximately 240,000 unskilled sedentary jobs that could be learned in 30 days existing in the State of New Jersey and 120,000 such jobs in Plaintiff's region. (Tr. 561).

Plaintiff alleges that the VE's testimony failed to provide the ALJ with substantial evidence for the step five evaluation, and is fatally flawed and must be invalidated because one of the cited job titles, Sorter, was not an unskilled job pursuant to the DOT. (Pl.'s Mem. L. at 43). The Third Circuit, however, held that inconsistencies between VE testimony and DOT information need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result. Rutherford, 399 F.3d at 557. The VE testified that the job titles he cited were only examples of the base of sedentary unskilled jobs available to Plaintiff, stating that 240,000 unskilled sedentary jobs existed in New Jersey and 120,000 unskilled sedentary jobs existed in Plaintiff's region. (Tr. 559-61). See Simpson v. Astrue, 10-civ-2874, 2011 WL 183124 at *5 (May 17, 2011 E.D. Pa.) (affirming the ALJ's decision where, despite one discrepancy with the DOT, the other enumerated occupations were merely examples, and not a complete list, of the work plaintiff could perform). Thus, because Plaintiff's residual functional capacity coincided with the criteria of unskilled sedentary work and the base of

sedentary jobs was not impacted, there is substantial evidence that there are a significant numbers of unskilled sedentary jobs in the national economy that Plaintiff could perform.

Plaintiff also alleges that the vocational expert's testimony failed to satisfy the statutory standard by sufficiently discharging the burden of proof that there was work in a significant quantum of jobs in Plaintiff's region. (Pl.'s Mem. L. at 46). This argument fails because Plaintiff focused only on the four listed jobs despite Plaintiff not being precluded from any type of unskilled sedentary work. (Tr. 550-61). The VE testified that 1,000 jobs regionally existed in the four named job titles alone, and this is a sufficiently significant number itself to support the ALJ's determination. Craigie v. Bowen, 835 F.2d 58, 58 (3d Cir. 1987) (finding that the existence of 200 jobs in a claimant's region represented a significant number).

Plaintiff asserts that the vocational expert's testimony was insufficient because he did not offer empirical data to support his job numbers. (Pl.'s Mem. L. at 48-49). The Commissioner has taken administrative notice of the numbers of unskilled jobs that exist throughout the national economy at various functional levels. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(b). Section 201.00 of Appendix 2 provides that approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy. The VE's testimony that, under the hypothetical posed by the ALJ, the individual could perform the requirements of all unskilled sedentary work thus supports the finding that a significant number of jobs in the national economy are available to Plaintiff.

Plaintiff further alleges that the vocational expert "conjured his testimony out of whole cloth" by improperly basing his estimates on personal experience. (Pl.'s Mem. L. at 49). The VE, however, based his testimony on statistics provided by the Department of Labor in addition to his own experience. (Tr. 561-62). The VE's expertise was necessary to cross-reference that

Department of Labor statistics against the DOT titles in order to extrapolate a more specific figure regarding jobs in the area that would be available to Plaintiff. (Tr. 562). See also, Brault v. Soc. Sec. Admin., 683 F.3d 443 (2d Cir. 2012). Plaintiff additionally failed to challenge the VE's expertise, qualifications, and/or methodology during the hearing and thus missed the full and fair opportunity to do so. See Brault, 683 F.3d at 450-51. In sum, the ALJ properly relied upon the VE's sufficiently substantiated testimony, which provides substantial evidence to support the ALJ's decision and satisfy the Commissioner's step five burden.

## CONCLUSION

For the reasons stated above, this Court finds that the ALJ's decision is supported by substantial evidence and will be affirmed.

 s/ Stanley R. Chesler
STANLEY R. CHESLER, District Judge

Dated: September 30, 2013